We'll have our last case of today, number 19-3301, United States v. Kelliher, Ms. Martin and Mr. Zosber. And Ms. Martin, whenever you're ready. Thank you, Your Honor. Is the volume acceptable? Mm-hmm. Okay. All right. May it please the Court, my name is Christy Martin. I represent the appellant, Dennis Kelliher, in this matter. With your permission, I'll reserve three minutes of my time for rebuttal. That's absolutely fine. Thank you. There are two broad issues before the Court today. And I think as I indicated in my reply brief, the most straightforward and dispositive is the sufficiency of the evidence to support either the guideline enhancement or the upward variance in the alternative sentence. However, the issue of whether the government may present new, in this case, contradictory evidence on remand without a persuasive reason requiring it be permitted to do so will arise again in the event of remand. For that reason, I'll start there. The offense level here was what, 26? Was that correct? Your Honor, the offense level, I'm sorry, I have the range in front of me. I don't have the offense level. Whether it be 26 or not, it was what, 78 to 97 months or something like that? Yes. It was 78 to 97 months. Without the more than 10 victim enhancement, it would be 63 to 78 months. Okay. And then the judge here said that when it went back, he would still have done a variance even if he did not do the sentence enhancement. Is that correct? That's correct. He did. Based on the same facts that would be required for the sentence enhancement, but in the form of an upward variance. And if you'd like, I can address the alternate sentence first if you prefer. We have a problem with the alternate. Let me say, as a former district judge, I find the question of reopening the record a very compelling one. And if that issue prevails, then you don't get to anything else. That's absolutely right. You remand for further proceedings on the record as it existed at the time of the first verdict. That's absolutely right. And I am happy to start there in hopes that this case will go back on remand. Your Honors, we have about 25 years of precedent that says that the government bears the burden of production on sentencing enhancements and that its case on remand must stand or fall on that record at the first sentencing unless the government has presented a persuasive reason why fairness requires a second opportunity. We also have quite a bit of case law that tells us what those persuasive reasons are, be that a lack of opportunity to address defense evidence or a previously unclear, ambiguous area of law that has since been clarified. We saw that in United States v. Smith. And more recently in United States v. Trant, the court recognized that a technical matter or momentary inadvertence might be a persuasive reason, particularly in the case of reopening a record a little different from here. But what we have below is simply the government assumed that its presentation was correct and that is a quote. And we know as far back as United States v. Coward, this court says that neglecting to the law is not a persuasive reason why the government should get that second bite at the apple. Let me work backwards. What was the prejudice that he suffered from the supplemental evidence coming in? Your Honor, I'm... He rebutted that new evidence through extensive cross-examination, did he not? Say that again, I'm sorry. He rebutted that supplemental evidence through extensive cross-examination or he attempted to rebut it, did he not? I think... There was. Excuse me. I think the prejudice is to the court more than to the litigants because I think a court should be able to expect that the lawyers coming before it in a case have prepared the case adequately and you don't have to have it go off on appeal and have someone say, oh gee whiz, you should have said something else and send it back and let them put in more evidence. So I think there is prejudice in prolonging litigation, but I think there's also considerable prejudice to the court in permitting half-prepared lawyers to muddle their way through. You will excuse my strong statement on the issue. Your Honor, I would agree with that, absolutely.  That was the right response. But I... And also from Mr. Kelleher's perspective, not knowing what evidence or even what theory you're going to be sentenced on on remand or whether we're going to have to come up and come back again is contrary to the notion of finality. It's contrary to the notion of efficiency in the appellate process. But if I may, a very important point about prejudice that I would like the court to take clear that the prejudice inquiry only comes after the government has provided a persuasive reason why it should be permitted. And the reason I say this is because this persuasive reason requirement is written in absolutes. As the Smith Court said, the government must provide a reasonable explanation. This requirement is a constant and there's no need to reach prejudice until the government has gone through that door. And I'd be happy to go through the cases, particularly the sentencing enhancement cases that make this clear. Where the court does not see any persuasive reason in the record, it has not even mentioned prejudice. It has explicitly said the court may only consider what was presented at the first hearing. And I'm referring to United States v. Suspedes and Roe. On the other hand, where the court has gleaned that there might be a persuasive reason or intimated that there actually was one, and now I'm referring to United States v. Dickler and Smith, both times the court left it to the district court's discretion to weigh that persuasive reason against prejudice. So for these reasons, Your Honors, I don't think that you need to do the prejudice weighing. I think the government cannot get past that threshold offering of a persuasive reasoning in this case. Well, the problem I'm having is the district court in both its initial sentencing ruling and on remand almost belabored the belief that your client's a public safety risk. And that I think it's, and quote, the most important thing, close quote, is the criminal history. And it seems difficult to extrapolate from that, that if remanded, the district court would not simply reimpose the upward variance, repeating once again what he said previously. Well, Your Honor, if you're going to do it, you ought to do it right. I would like to second that sentiment, but also I would say, Your Honor, much of what the district court said was its basis for sentencing higher in the guideline range. And this court has repeatedly said that when the court is going to impose an alternate sentence, it must first calculate the guideline range that it's varying from. Otherwise, we have no sense as to the size or proportionality. So to the extent that certainly other factors were involved in the first sentence, I don't think we can attribute that to this sentence or assume that those factors which push the judge to the higher end of the original range would do the same thing in a lower range. Let's go back to the enhancement. Why don't you cover what it is with regard to Mr. McCown and Mr. Martins that was incorrect on remand in terms of the new evidence? Certainly. Well, with respect to, obviously, we objected to any- They were not victims, right? That is the argument. There's insufficiency of the evidence, I should say. Yes, and for two very different reasons. The argument with respect to Mr. Martins is much more straightforward in that, much like the two victims that the government had to concede on the first appeal, we have no evidence that Mr. Martins is anything other than a disgruntled customer. And that is because there's no evidence anyone intended to defraud him. My guess is there were a whole lot of disgruntled customers here, but that's okay. I think there probably were. I can summarize the evidence on Mr. Martins very quickly. He paid for two motors to be purchased. Those motors were purchased, and he went to Trent Marine and visually inspected those motors. At that point, he paid for a third, and that is where the record ends. We know now those motors have not been installed on his boat, but frankly, we have no idea where those motors went. And we also don't know, I think most importantly, we don't know where his money went. There was only one account that Dennis Kelleher could access, and we don't know that that money actually went into that account. So with Martins, it's really a void in the record. We just don't have anything to show he was part of this scheme. The issue with Mr. McCoon, obviously, is quite a bit more complicated, but there is certainly, I think first and foremost, a reliability issue there. I realize this is a difficult argument to be making on appeal sufficiency, but we have a record of unreliability from the first hearing. The government had to come in and say, this agent testified incorrectly at the first hearing. And now we have the same agent again testifying without any specifics as to expenses that might not have been reimbursed. We don't have any dates. We don't have any locations. Generally, we just have, again, a disgruntled customer who apparently said, oh yeah, there was some stuff he should have paid for. That same lack of detail means we can't differentiate what was and was not paid for. The agent agreed that Mr. McCoon was reimbursed well over and above the price he paid for the boat to cover his expenses, and we don't have any breakdown of what was and what's not covered. So in that sense, I think we don't have any reliability or sufficiency to establish by a preponderance that this man had expenses that were not paid for trying to get reimbursed. Our point on that really goes even further. The government had come in, in the Kennedy-Smith line of cases, stating that it wanted to show losses incurred in seeking reimbursement. None of those losses that Agent Kukler testified at the second hearing were incurred in seeking reimbursement. And of course, there's also some issues about whether closing costs occurred because the boat was never actually, title was never transferred. So there's no evidence that any kind of closing costs occurred. And of course, he also references third parties that had traveled. We don't know who they are, and they certainly were not considered victims in this case. So for those reasons, the evidence was simply insufficient to establish Mr. McCoon as a victim. And what that does is that takes us down to eight victims when we take out Martins and McCoon. And then, of course, what we have is an error in the calculation of the guideline range. Any further questions? I have nothing further. No. Okay. Let's hear from Mr. Zosmer then. Thank you. Get you back on rebuttal. Thank you very much, Your Honor. Can you see me as well as hear me? Yes. Yes, we can. I can't. I'm still seeing the previous. I'm still seeing Christy Martin. All right, well, I'll talk and hopefully my image will appear. First of all, I want to just commend Mr. Payne and the court staff. I think they've done a remarkable job in making this work. As smoothly as it works. And I know the court is aware of that, but I just want to make my two cents on that. With respect to this issue, the main thing I want to emphasize, I will go through the different points and, of course, address what the court's interested in. But the main point I want to stress is the variance and the fact that this judge has decided multiple times that 96 months is the correct sentence. And this court, as we know, defers to the judgment of a district judge who is the preeminent actor when it comes to federal sentencing. That's going to be my main stress today. But let me go in order and we'll talk about preservation of the issue. We'll talk about these different victims. But I am going to come back to the fact that at the end of the day, this is a discretionary decision by the judge that whether there are eight victims or 10 victims or travel costs or bank accounts, that 96 months is the right sentence for this recidivist fraudster, which is who we're dealing with. Well, you know, Mr. Zosner, I started sentencing defendants back before the guidelines came into effect. And I had a great deal of discretion in choosing a sentence. But when the guidelines came in, of course, in the beginning, they were mandatory. Now they are not mandatory. But nevertheless, there are certain explanations and considerations that have to be presented to the court in order to justify a particular sentence. And if the trial attorney has simply not prepared the case sufficiently to put on the necessary evidence, I feel very strongly that it is improper to give the government a second bite of the apple. I think your attorneys must prepare their cases adequately to put on at the sentencing the evidence that is required. And if the case is remanded and you're told to re-sentence, I think they must deal from the record as they had presented it to the court and to give an excuse, well, we thought we had enough. I find that inadequate. Well, allow me to address that, Your Honor, and perhaps I can change your mind a little bit, but also address the other judges. First of all, very importantly, the government here did not introduce new evidence in order to seek the enhancement that we agreed at the first appeal was not supported. Very significantly. Let me say, I think it was rather devious. You understood when the case was remanded that you shouldn't, as I've been saying, you shouldn't on the same guidelines, on the same sentence, be able to put in more evidence. So instead you turn around and say, all right, we won't try that. We will try for an enhancement instead. I find that subterfuge perhaps a little annoying, and I would not consider it adequate to say that you aren't taking a second bite of the apple. Well, with all respect, Your Honor, and I take personal responsibility for this. I consulted with the trial AUSA on this. I did not consider it subterfuge then. I do not consider it subterfuge now. We're familiar with the precedent of this court. We know that the cases have gone in different directions, and I'll talk about that. But there are certainly cases that have held, as Ms. Martin says, that the government should not get a second bite in some cases. Fully aware of that, we didn't think it was a subterfuge. We instead thought it was a proper act on our part to say to the court, do not apply that two-level enhancement. We give up on that two-level enhancement. That's not devious. That puts us behind the eight ball, that we agree at that point that the guideline range is 63 to 78 months, and to achieve a higher sentence becomes a greater burden at that point on the government. We now have to persuade the court that there should be an upward variance. In addition, this notion of an upward variance in this situation, rather than being devious with all respect, is explicitly suggested by this court in its Kennedy decision. Kennedy was the case that held that in order to be counted as a victim, there has to be actual loss. And that's, of course, the problem in this case, because many of the victims were reimbursed. But Kennedy then says that we recognize that this is an odd guideline, that it's odd to talk about somebody as a victim whose money was stolen only because they were promptly reimbursed. And we therefore note that district courts have full discretion to grant an upward variance in this circumstance. So reading Kennedy, I advocated that course. We took a hit from not presenting the evidence at the outset. We took the hit that we were agreeing to a guideline range of 63 to 78 months, and now in the more difficult position of asking for an upward variance. So this case, again, with all respect, this case is not Roe, this is not Dickler, this is not any of those cases in which the government wanted to introduce additional evidence for a specific enhancement or provision that had not been supported before. We were now... But it is a case where the assistant U.S. attorney put in insufficient evidence to justify the sentence that she was demanding. And I think we should not encourage slipshod preparation of cases by permitting the prosecution a second bite of the apple if they can't get in enough verified evidence the first time. If the AUSA had worked a little... Frankly, I think if the AUSA had worked harder on the case, had better prepared the case, if you'd better prepared it for sentencing, this issue shouldn't be up. And for that reason, I maintain my position that it's a second bite of the apple and I find it very offensive. I'm not quarreling that the case could have been better prepared the first time around. There's no question about that. And again, that is why we really increased the burden on ourselves. I do want to address while I can, and it may be a lost cause with respect to you, Your Honor, but I do want to say for the record that I am not fully agreeing that there is a blanket prohibition against the government or a defendant getting, quote, a second bite of the apple. This court, to be very frank, has said different things at different times. I have addressed this issue personally going back to the Coward case, which remarkably is 20 years ago that I argued, where the court did allow us to go forward and go back to the district court to attempt to present more evidence on a suppression issue where we had a pretty lousy excuse then in that case. The excuse there being, true excuse, but it was an excuse that the AUSA was brand new and she didn't know what needed to be introduced. We honestly said that to the court in Coward. The court in Coward allowed us to go back. These cases play out differently over the last 20 years. There's not consistency. There's only consistency regarding one thing, and that is what I believe was the Smith case said is the, quote, the paramount consideration. The paramount consideration is prejudice. Is the defendant prejudiced? And to be honest here, the defense has not suggested anything that meets the legal definition of prejudice. The defense had full notice of the evidence that we presented at resentencing, a full opportunity to address it, a full opportunity today. Now, Your Honor, Judge Roth, you are correct that certainly a district court can consider prejudice to itself. We don't dispute that. What this comes down to, as this court has said many times, is the discretion of the sentencing judge or the judge in any situation because this doesn't only come up at sentencing. The district judge has discretion to decide is there prejudice to itself, to the defendant? That's the paramount consideration. And I thought Chief Judge Smith's statement in the Trant case was refreshing. Again, lousy excuse by the government. They rest their case and then a moment later say, we forgot to put in an element of the offense, which was the prior felony. And the judge permits it in his discretion because it's just no big deal to do that and it's not prejudicial at all. And Chief Judge Smith on appeal says, this is not a game of gotcha. Because everybody makes mistakes. Prosecutors make mistakes, defense lawyers make mistakes, and judges, of course, also sometimes make mistakes. What this really should come down to, my pitch on this, and I think it's consistent with this court's body of law as a whole, what it should come down to is prejudice. Are you hurting somebody? Because if there's no prejudice, then the interest of justice is certainly served by getting things right. That's what we're all getting up every morning and trying to do. And here, there was no prejudice. Now, having said that, we nevertheless did not make this argument in the district court. We nevertheless did not go to the district court, I think appropriately, and say, let us put in more evidence. Nobody's prejudiced. We want that enhancement. We said, we're giving it. Tell us why there was no prejudice. The way this court has explained it, there was full notice to the defense of the evidence that the government was gonna present. The evidence regarding Martins and McCoons, these two victims, was spelled out in the government's resentencing memo. It's evident from, you know, Ms. Martin is always an incredibly able lawyer, so this doesn't say much, but it's clear from the record that she was very well-prepared and addressed it and cross-examined the witnesses and made all the appropriate arguments. There's no legal prejudice here whatsoever in considering this evidence. And then you add to that the fact that we were only offering this evidence to prove a different point, which is the upward variance and not the enhancement that we gave up on. The district judge, of course, can impose the enhancement because he's not bound by the same rules that we are. Well, he's not bound by the same rules, but if he got it wrong, maybe you're the one who has to pay for that. No question. And I'm here to argue that he did not get it wrong, that he considered the evidence. So to sum up before I go on to the other points, there's not a preservation issue here because we didn't try to, you know, get the same enhancement. And even if there is a preservation issue, there was no prejudice and that should be what controls. That's what allowed further evidence in Smith and Coward and other cases. And I think all of this court's cases can be reconciled accordingly. Turning to the question of the victims, I'm gonna spend very little time on the evidence, except of course, answering the court's questions. Martin's is really easy. Kelleher was the guy he was dealing with. Kelleher said, send me 36 grand for these three motors. He never got the three motors. The money came in while his scheme was well underway in February and March, several months before the scheme was exposed. Ms. Martin says that, well, we don't know that Kelleher had access to this money. We know that Kelleher had access to all bank accounts. He had direct access to the Wells Fargo account. He was forging Tipton's signature on the Bank of America account. And even if he didn't access the money, what does it matter? This is the fraud. He lied to Martin saying, give me 36,000 and you'll get three engines. He didn't get the three engines. Somebody else got the money. That's the fraud. So that's a very weak presentation. And Mr. Martin's was good enough to come in and testify and explain what happened to him. And the court should consider that whether it's for a variance or for the guidelines itself. With respect to McCoon's, again, very clear testimony from the agent. We're explicitly following the Smith decision, which says if you are not reimbursed for time and money that you expend, that that count that now qualifies you as a victim. The agent testified very clearly several times, both on direct and on cross, that he spoke to McCoon's and that McCoon's said that he and a couple other people took multiple trips to arrange for the collection of this boat that unbeknownst to them was already in a different state because Kelleher had sold it out from Underham. That's reimbursable. The Smith decision says, it doesn't matter how much it is. It doesn't matter how significant. It gets you over the line to count as a victim. Again, I wanna wrap up by focusing on the variance question because I do think that's the most important issue here. And to be very clear about what Judge Bailson said was not, I'm considering the new evidence and that justifies the variance. He said something different. If you look very closely at the transcript, he said that he was permitting, he was listening to the new evidence and permitting the government to present that new evidence. But he said, and he said, I'm not familiar with a third circuit case that would prevent me from doing that. But if there is one, I would still impose the same sentence. In other words, I would impose this sentence, even if I did not hear this new evidence, even if there were eight official victims instead of 10 victims. And that makes sense when you think about sentencing in the age of Booker. Judge Roth, of course, explains how that discretion existed before the guidelines and now it exists again now. Booker is so- Well, but not to the extent that it existed before. Right. And what Booker makes clear, and this court's precedent since Booker is that courts have to make a correct guideline calculation. That's what the Supreme Court has called the starting point. But once you have that starting point, then the district court has discretion. It does not have to give a within guideline sentence. It can go outside based on the 3553A factors. And it has to give an explanation to permit this court's review. Okay, but the appellate is saying that because the sentencing guideline computation at the first trial is no longer valid, that at the second trial, there should have been a recomputation with the lesser number of victims asking for the enhancement, and that was never done. Well, I believe it essentially was because this is the simplest case imaginable. No one- Well, it may have been done in essence, but it certainly wasn't done in black and white. Again, well, Your Honor, there's only ever in this case been two choices on what the final guideline range is. It's either 24 as a final level 24, or it's a level 26. Nobody has ever suggested anything different. And that's why when Judge Baleson said what he said, which is that if I didn't hear this evidence and I didn't apply this enhancement, I would give the same sentence. The defense at that time did not object. There was no procedural objection to remind the court, well, you need to specify what guideline range you're varying from because everybody knew it. It would be sort of, I'm not faulting Ms. Martin because why should she say that? The only choices here are level 24, level 26. So we absolutely know what the range is that the court is varying from. And what it finally leads us to is why this sentence should be affirmed at this time. I think it is now with the district court then beaten into the ground as to what the facts of this case are and what the judge's view of this case is based on his discretion. He, according to this court, is the superior actor when it comes to criminal sentencing. Even if the defendant is a sleazeball, we are required under the guidelines and under the statutes to be reasoned and careful in our consideration of sentences. And I can remember judges before the guidelines, they would give very extreme sentences because they could within the statutory limits, but they had no basis. And the guidelines has told us you must have a basis for your sentence. And that cannot just be the fact that the defendant is a really nasty sleazy guy. That has to be considerations established by statute and by the guidelines. And that requires a careful procedure that is not a gut reaction to what you think of the defendant. I absolutely agree with you, Your Honor. And that certainly is not what happened here. Judge, and I'll filter in my answer to Judge Ambrose question, how much money? He tried to steal over $2 million from multiple, multiple people. The final loss here was about 1.5 million because Tipton had paid back some of the money to people. It didn't come from Kelleher. The sentence here is not based on the fact that Mr. Kelleher is a sleazy person. It's based on specific facts. And at the end of the day, it came down to this question of victims. And what we knew from going back twice to the district court, what we knew is that all these people in the colloquial sense were victims. All of them were people who Kelleher lied to, took their money and didn't deliver what he promised to deliver. And what we wound up debating because of the way the guideline is written is things like McCoon's travel expenses and how quickly Martins was reimbursed where after Kelleher stole a $230,000 boat from him. And so what the district court essentially is telling us is, do you really think that the final sentence for this man comes down to McCoon's travel expenses? When McCoon was purposely defrauded, the Judge Bailson is looking at the actual facts. He's not looking at this sleaze factor. He's looking at the actual facts that Kelleher sought to defraud people of over $2 million, that there were at least 10 victims. There were more than 10 people who were targeted. Tipton himself was nearly destroyed by this, obviously, because it was his business. And this is a man, Kelleher, who's on supervised release after completing another federal sentence for fraud. And Judge Bailson has now told us twice, no matter how many times I look at this as the sentencing judge who's been on the bench, I think for close to 30 years, this is a 96-month sentence. And I don't think that there's any basis in any precedent of this court to say that that's not a proper explanation of an upward variance when we all know the guideline range that he was varying from. And that's what should control this case. At the end of the day, I respectfully urge affirmance based on the fact that Judge Bailson has had the chance twice to consider this and made very clear that he is basing his sentence on the actual facts and not on this one last technical issue, even though I think we're correct also in presenting that evidence and asking for the upward variance as we did. And so I respectfully, again, must disagree. I'm sorry it's so frequent in this argument, but there was a suggestion before, well, if we resolve this preservation issue, are we just done? Does this just go back? And the answer is no, because Judge Bailson told us. He said, even if I can't consider this evidence, I know this case, and this is a 96-month sentence. And that warrants the deference of this court. Thank you very much. Any further questions from my colleagues? Okay, thank you. We'll hear from Ms. Martin. Thank you. Can I just start with one question to you? And you can maybe tee it up for the rest of what you would like to make sure you say in rebuttal. The variance that Judge Bailson said was, look, no matter what happens, his prior criminal record and the details of the scheme tell me that even if it's 63 to 78 months, I'm staying at 96. And there's a great, great deal of discretion we give to district judges post-sentencing revolution in the early 2000s. How do we get around that? Your Honor, the fundamental problem with that and also the facts as recited by Mr. Zalzmer is those are not the details. While we talk about Mr. McCoon and his possible expenses, what Mr. Zalzmer does not say is to Sully and Carollo on the first appeal. And now, Mr. Martins, the government conceded those first two, they were not part of the scheme. And I argue that we can't make any findings that Mr. Martins is part of the scheme. So that's a general scheme. I mean, when you look at pages, I think it's JA 338, 339, he's saying you can send this back to me in effect 10 times. He's going to get 96 months. I'm going to vary. And here's why. And he gave the reasons. And I just don't know how I get around saying that's such an abuse of discretion that Mr. Kelleher gets less than 96 months. Isn't the revised sentence, the upward various sentence coming to us on plain error? Your Honor, a couple different points to that. Mr. Zalzmer said that the variance was on plain error. I would argue that it is not. Sorry, I lost my page. If we look at page 328, and I'll confess I'm not a trial lawyer, and it's not as artful as I wish it was. But I said, Your Honor, with regard to a variance, there's no basis. The facts are the same. The guidelines have changed. And that is true. And Your Honor, I know that the government loves to cite Flores Mejia, but I would like to cite Flores Mejia to say that the court held a party must object to a procedural error after the sentence is pronounced unless a relevant objection has been made earlier. The court was absolutely on notice from the beginning of the hearing that I was objecting to any new information, any application of the enhancement or any variance. I will concede that the objection I did not make was to the sufficiency and reliability of the evidence as to Mr. McCoon. But let me just say, even if this was on plain error, what we're talking about, these quotes, and this is the district court, the defendant doesn't deserve a lower sentence because there's an error in the way the government counted. That was not the error. And at appendix three, that was 338. At 339, he says, certainly as I look at the record now, there are 10 victims. That's an error. That's a clear error. And this court held, I want to say United States versus Berry. That is plain error. The court cannot sentence a defendant on erroneous information. And like I said before, this isn't about whether some little trip counts as part of loss. There are three defend, or excuse me, there are three victims who just were not part of the scheme. The government has conceded on at least two of those. So I don't think this is not a case where the court can say these details as I understand them warrant this sentence because the details are, quite frankly, wrong. But the details were essentially, there were to be 12 victims. It turns out that two of them really wasn't a nexus. And two of them, it's alleged that there's insufficient evidence and that the record was, in effect, supplemented in a way that wasn't kosher on remand. But the judge is saying, OK, I'm not buying that. But even if I were to buy that, I'm going to vary based on prior criminal history and the way this scheme went about, the way this person acted. And with all of the discretion that we give, going up from 63 to 78 months, in effect, varying upwards to 96, I don't see too many courts overturning that. Now, there are questions as to whether he, you know, he dotted his I's, crossed his T's, or touched all the bases, whatever cliche you want to use. But in effect, he's saying, no matter what, you can send it back to me X number of times, it's going to be 96 months. And maybe we ought to send it back to someone else. Your Honor, respectfully, and maybe I sound like a broken record, I need to find a better way to say it. But when it's based on a misunderstanding of the facts, it's very clear to me. And the government intimated this at sentencing. And I noted that in my brief, because it is not true. The government intimated that the two on the first appeal, Chisouli and Carollo, they were just sort of a technicality that they weren't considered. That's not true. They conceded that that money went to Trent Marine, not to Dennis Kelleher. And I would argue we have the same situation on Martins. I absolutely respect that the judge has discretion. And he was very upset with the circumstances of this case. But he was very upset with the circumstances of this case at the first sentencing and did not see a basis for an upward variance. This court has said time and time and time again that the calculation of the guidelines and explaining the basis for the variance is critical. And that's why, whether the court feels that I should have preserved it better, I think even under plain error, it certainly should go back. I will, I just want to address Mr. Zausmer's comment. I think about Trent. I disagree. I think the case law from this court is pretty clear and easy to follow in terms of supplementing the record. And he referenced Coward and said that the court found there was, the court there did not say there's a persuasive reason. Go back and put your evidence in. The court said we're going to leave that to the discretion of the district judge to weigh whether there's a reason and whether there's prejudice. And Coward is the case where the court said neglecting to put on evidence or misunderstanding of the law is not what we mean by a persuasive reason. I think that's very clear. Very quickly with Trent, I want to point out that the court said it didn't say this is a lousy reason. The court said this is hardly compelling, but a technical matter. And that's why it was such a gotcha moment because the prosecutor closed the case and then realized he or she forgot to just put in a stipulation, a stipulation that the defense agreed to. And the court in Trent was very, very careful to differentiate trials and how important it was at a trial to, it said the purpose and procedure and pressure in trials are different. They're much more outcome determinative. The court said we're less reluctant to open this case at trial for that reason. But I have to differ. I think that the only reading of Trent is that this court found that momentary inadvertence with no opportunity in the minute to fix it. That's a persuasive reason. So I just, I would point that out to the court and also the court's quite a long discussion about why trials and whether the government can reopen its case at trial is different from a motion to suppress. And I would argue by extension from a sentencing hearing. I just, real quickly, I would like to correct the record. In terms of loss, I have to dispute Mr. Zalzmer's number of 2 million. I would also dispute that 1.2 million is somehow a low number. This, the loss in this case was based on intended loss and every single dime got counted, including the stuff that was repaid. So it is not a deflated number. But Mr. Zalzmer says the net was 1.5. And I don't have the exact number in front of me, but what he said was that that was artificially lowered by what was paid back by Gerald Tipton. That's not true at all. Everything was included in that. I just want to clarify that. So essentially, your honors, I think I've made, I've made my presentation as to why I think this evidence is insufficient, whether it is on plain error or harmless error. But I think probably when it comes down to... What was Mr. Kellner's prior criminal record? The prior, it was a very similar fraud, your honor. Okay, thank you. Anything further? Not from me. Okay, thank you. And we'll take the matter under advisement. Thank you both, counsel, for very well presented arguments.  under advisement. Appreciate it.